RALPH B. GUY, JR., Circuit Judge,
concurring in result.
Although I agree with the result reached by the court, I arrive at the result by different reasoning. For me, the entire case turns on the meaning of the term “applicable law” appearing in the two relevant portions of section 365 of the Bankruptcy Code, which governs the trustee’s assumption (or rejection) of executory contracts within the debtor’s estate. Section 365(f) is considered the “general rule” and, by nullifying anti-assignment provisions in private contracts and in “applicable law,” embodies the policy favoring the alienability of executory contracts.
(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease....
(2)(A) [if] the trustee assumes such contract or lease ... and
(B) adequate assurance of future performance by the assignee of such contract or lease is provided....
11 U.S.C. § 365(f)(lH2) (emphasis added). The confusion lies in the fact that section 365(c), the recognized exception to 365(f), appears at first to resuscitate in full the very anti-assignment “applicable law” which 365(f) nullifies. (Anti-assignment clauses in the contracts themselves remain non-dispositive, however.)
(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
(1)(A) applicable law excuses a party, other than the debtor, to such contact or lease from accepting performance from or rendering performance to an entity other than the debtor ... whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
(B) such party does not consent to such assumption or assignment....
11 U.S.C. § 365(c)(l)(A)-(B) (emphasis added). If these two apparently contrary provisions are to be reconciled, “applicable law” saved by section 365(c) must either mean something completely different from the “applicable law” trumped by section 365(f), or it must refer only to a discrete subpart of the law encompassed by section 365(f). All agree, however, that “applicable law” refers to non-bankruptcy law.
The district court, adopting the reasoning of the bankruptcy judges, found that the “applicable law” saved under section 365(c) was Ohio case law recognizing that the members of voluntary associations are subject to the associations’ regulations which are immune from judicial review absent fraud, arbitrariness, or collusion. Since the regulations at issue here permitted transfer to spouses only upon death or divorce, that was the end of the matter.
The trustee argues that the applicable law to be heeded by section 365(c) is broader than the voluntary association jurisprudence, and should also encompass — as far more pertinent to the issue — Ohio jurisprudence which, like its federal counterpart, favors the assignability of executory contracts. No one disputes that Ohio, in general, encourages such alienation unless the contract itself prohibits assignment or “is one for personal services, or involves a relationship of personal confidence ... [where] the personality of one of the parties is material.” 6 Ohio Jur.3d Assignments § 11 (1990).
Given this Ohio rule, the trustee also argues that the golf membership was not a “personal” contract, but rather a business-oriented exchange of cash for golfing facilities, provided by a for-profit corporation. In a less compelling argument, the trustee also contends that the club rules allowing “transfers” between spouses did not expressly preclude “assignments” to non-spouses. All courts involved in this case so far have found that the rules did implicitly forbid assignments to non-spouses.
*699 On appeal, the club and Mr. Magness’s former wife — to whom his membership was transferred by court order — reassert the district court’s reasoning that “applicable law” here refers to Ohio law regarding the sanctity of private clubs’ self-governance. The defendants also insist that the membership agreement, even if it is to be termed an executory contract, is a “personal” contract such that Ohio law would “excuse” the club from accepting performance from anyone other than Mr. Magness or his former wife.
There is little authority on the scope of the “applicable law” to be heeded under 365(c). One court has limited this subsection to rules regarding “contracts for the performance of nondelegable duties.” In re Taylor Mfg., Inc., 6 B.R. 370, 372 (Bankr.N.D.Ga.1980). This case, citing no more than a (now obsolete) excerpt from 2 Collier on Bankruptcy,[1] is clearly in error since section 365(c) governs not only delegation of duties but also assignment of rights.
The court in In re Braniff Airways, Inc., 700 F.2d 935, 943 (5th Cir.1983), rejected In re Taylor’s narrow construction of 365(c), but in so doing seemed to suggest that “applicable law” is not limited at all. The court failed to note that such a reading could bring 365(c) into direct conflict with 365(f), since “applicable law” would, under its approach, mean the same thing in both subsections.
Similarly unhelpful is the First Circuit’s interpretation of the interplay between sections 365(c) and 365(f).
[W]e see no conflict, for (c)(1)(A) refers to state laws that prohibit assignment “whether or not” the contract is silent, while (f)(1) contains no such limitation. Apparently (f)(1) includes state laws that prohibit assignment only when the contract is not silent about assignment; that is to say, state laws that enforce contract provisions prohibiting assignment. These state laws are to be ignored. The section specifically excepts (c)(l)(A)’s state laws that forbid assignment even when the contract is silent; they are to be heeded.
In re Pioneer Ford Sales, Inc., 729 F.2d 27, 29 (1st Cir.1984) (citation omitted). This dense passage appears to be founded on the erroneous belief that section 365(f) applies only when the bar to assignment is in a (legally-enforceable) contractual provision. Section 365(f), however, specifically includes within its scope situations in which the bar to assignment is not contractual but purely a product of the law.
I need not resolve the problem, however, nor fully articulate my perception that the two sections refer to completely different legal concerns, with 365(f) covering “applicable law” (and contractual clauses) prohibiting or restricting assignments as such, and 365(c) embracing legal excuses for refusing to render or accept performance, regardless of the contract’s status as “assignable” according to state law or its own terms. According to this understanding, the executory contract’s apparent prohibition against assignment in this case is plainly immaterial under section 365(f). Prohibiting assignment by concluding that the “applicable law” under section 365(c) is Ohio’s deference to the rules of voluntary associations would be to breathe life back into that nullified anti-assignment clause.[2] Unlike the district and bankruptcy courts, I turn instead to the longstanding Ohio rule which excuses a contracting party from rendering performance to, or accepting performance from, a third person or entity *700 where the identity of the original contacting party was material. Such contracts are considered non-assignable precisely because of this right of refusal. In my view, this recognition of the right to refuse is the very sort of “applicable law” saved by section 365(c). And, in compliance with section 365(f), I do not rest my analysis on the fact that Ohio law makes such contracts non-assignable, but rather on the reason behind that legal conclusion.
Ohio courts have long recognized that
[s]o-called personal contracts, or contracts in which the personality of one of the parties is material, are not assignable. Whether the personality of one or both parties is material depends upon the intention of the parties, as shown by the language which they have used, and upon the nature of the contract.
Starchroom Publishing Co. v. Threlkeld Engraving Co., 13 Ohio App. 281, 283 (1920). Given that the club is a voluntary association, the identity of its members is surely “material” to the membership agreements. The club’s objection to the proposed assignment is the resulting interference with its ability to confer the full golf privileges on those members by the method of its choice.
It makes no difference that the proposed offerees of Mr. Magness’s full golf membership have already joined the association, or would be required to do so under the club’s traditional procedures. “[T]he nature of the contract” is not affected by “the fact that the particular person [whom the would-be assignor] attempted to designate was personally unexceptionable.” Id.

. 2 Collier on Bankruptcy § 365.05 (15th ed. 1991) now states that ”[t]he wording of [section 365(c)] is such that considerably more contracts than those which one would normally consider personal service contracts are affected.... [T]he reference to applicable law in section 365(c) includes situations in which state or federal law can be said to bar assignment.”

. In addition, the cases on which the district and bankruptcy courts relied only implicitly recognize the sanctity of private associations’ rules and regulations. The cases simply deferred to the non-arbitrary, non-fraudulent "decisions of the tribunals of such association[s] with respect to [their] internal affairs." Ohio High School Athletic Ass'n v. Judges of the Court of Common Pleas of Stark County, 173 Ohio St. 239, 181 N.E.2d 261, 262 (1962). See also Lough v. Varsity Bowls, Inc., 16 Ohio St.2d 153, 243 N.E.2d 61 (1968).